WILLIAM HAWES, plaintiff in error, v. ELIZABETH PAUL, administratrix, defendant in error.

(Atlanta, January Term, 1871.)

1. EVIDENCE—DILIGENCE—FOUNDATION FOR ADMISSION OF SECONDARY EVIDENCE.—Where, on the trial of a bill in equity in relation to the settlement of copartnership transactions, the question in controversy is the amount due on the books, and on trial, the defendant lays the foundation sufficiently in law for the admission of secondary evidence of the extracts of the books, and the Court rejects the testimony:

Held, That while questions of diligence are addressed to the Court, and, in doubtful cases of accessibility or diligence, this Court will be reluctant to interfere; yet, when the evidence is material to the elucidation of questions before the jury, and the loss of the original is, under the rules of law, sufficiently accounted for, this Court will direct its admission.

. 2. SAME — EXTRACTS — EXHIBITS — SECONDARY EVI-
DENCE.—Where the extracts of books lost are attached as exhibits
to the answer to the bill, and are in evidence, this fact does not de-
prive the party of the right to introduce secondary evidence, if mate-
rial, and the foundation for its admission is properly laid.

Secondary Evidence. Before Judge Harrell. Stewart Supe-
rior Court. August Term, 1870.

Jeremiah Paul, by his bill against Hawes, made this case.
In 1858 he bought an undivided half interest in certain mills and
land from Hawes, on credit, for $3,000 00 gave his notes there-
for, and formed with him a partnership, by which he was to
take charge of said mills in person; Hawes was to furnish a la-
borer. They were to divide the expenses of the mill, and the
profits were to be applied, first, to the support of Paul's family,
and then one-half of the net balance was to be credited on said
notes. By Paul's consent, Hawes sold $1,600 00 worth
of said land and took the proceeds. *Paul furnished him
about $400 00 in supplies, from the mill. In 1856, Hawes
wished to sell the balance of the land and the mills, to one Da-
vis, at $3,000 00 cash to himself, and agreed, if Paul would
consent to this sale, he, Hawes, would give up to Paul his said
notes and divide equally with him the proceeds of said partner-
ship. Paul consented, the sale to Davis was made, and Davis
bought of Hawes other partnership property. Hawes took the
books of the firm, pretending to wish to collect and settle the
firm business, but now refuses to let Paul have the books, or
come to any account with him, or to give up said notes. He of-
fered to give up Hawes' bond for titles, prayed that he be com-
pelled to account and give up said notes, and that, meanwhile,
he be enjoined from selling the notes and from collecting the
accounts, and that the books be put into the hands of a Receiver.
Paul died, and his wife, Elizabeth, became his administratrix,
and was made a party in his stead.

The averments of the bill were admitted, except as here mod-
ified. The partnership was, by written agreement, to include
the mill, a blacksmith shop and raising of stock. Proceeds were
to be applied, first, to paying Hawes' hire for his blacksmith
and the other slaves furnished, and furnishing them provisions
and clothing; then half of the net proceeds was to be Paul's,
and, deducting from his half a reasonable support for his fam-
ily, the balance was to be credited on said notes, which were for
$1,000 00 each, due one, two and three years after date. In
1856 this partnership was dissolved, by Davis agreeing to buy
out Hawes and take his place in the partnership with Paul. Paul
was to get up his notes for $3,000 00 and give Davis his notes
for $2,000 00 and have from Davis an undivided half interest
in said land and mills when he paid Davis $2,000 00, according
to the terms agreed upon by them. He said the other property
sold to Davis went, like the lands and mill, as part of the firm
property. Hawes admitted he had the books, said he was ready

to give up the notes and settle, but Paul was not. He claimed that the firm owed Paul little if anything. To this answer he attached as exhibits what purported to be a list of the persons *owing the firm and the amount due to each. In October, 1858, there was a verdict against Hawes for $1,066. 74, with an order that he give up Paul's notes. Hawes appealed. On the appeal trial, complainant read evidence of conversations of Hawes, to show how much was made by said business, and closed. Defendant's counsel proposed to introduce secondary evidence of the contents of the books of the firm. To account for the non-production of the books, Hawes testified that he delivered them to C. A. Evans, his attorney, and had never seen them since, and could not produce them. B. S. Worrill, Esq., Hawes' solicitor, stated that he and Evans were partners in the practice of law, representing Hawes, that these books were in their office when they drew said answer and when Evans went into the Confederate army; that he had seached for them diligently, but could not find them. It was admitted that Evans had not been applied to for the books. Worrill said he did not write to him because he was satisfied Evans left the books in their office, as aforesaid, and could tell nothing about their whereabouts. The Court held that the loss of the books was not sufficiently accounted for, and would not allow the evidence. The jury gave a verdict against Hawes for $600 00 and interest, and it was decreed that said notes should be given up. The refusal to admit secondary evidence of the contents of said books is assigned as error.

B. S. Worrill, J. L. Wimberly, for plaintiff in error, cited Irwin's P. Code, section 3714.

E. H. Beall, for defendant.

LOCHRANE, C. J.

This was a motion for a new trial, arising out of a case in equity, tried in Stewart Superior Court, in relation to the settlement of copartnership transactions. The record is voluminous, but, in the view which we take of the errors assigned, it will not be necessary to go at length into the various matters that encumber the record. The point of difference is in *the amount alleged to be due, about which testimony was introduced, and out of which grows the main controversy.

Upon the trial of the case below, the bill and answer were read to the jury, and the accounts taken from the books were attached as exhibits to the answer. During the progress of the case the defendant offered evidence of the contents of the mill-books of Hawes and Paul, and laid the foundation for its introduction, by proving first by Hawes himself, that he delivered the original books of the partnership to General Evans,

Hawes v. Paul

that he had not seen them since, and that they were not in his possession, nor did he know where they were; secondly, B. S. Worrill, the partner of Evans, stated that he and Evans had the books in their law-office when they made out the answer of Hawes to the bill, that the books remained in the office until Evans went into the army, that he had made diligent search for them, but could not find them. The Judge rejected the secondary evidence, holding that the loss of the books was not sufficiently accounted for. We are of opinion that, under section 3714 of the Code, the Court erred in rejecting this testimony, as the cause shown was sufficient to show that the books were not accessible to the diligence of the party.

1. It is true, that, under the rules of law, questions of diligence are addressed to the Court, and we will not, ordinarily, interfere with the judgment of the Court in matters of doubtful diligence or accessibility. But when the introduction of secondary evidence is material to the elucidation of questions before the jury, and the loss of the original is, under the rules of law, sufficiently accounted for, it becomes our duty to direct its admission, that the rights of parties may be properly and legally presented to the jury for their intelligent adjudication.

2. The doubt in this case arises upon the fact that the extracts from these books were attached as exhibits, and as such were admitted in evidence. It is also to be presumed that the Judge below charged the jury in regard to the effect of the answer as evidence, and that the party had the benefit which the law gives him in the premises. But notwithstanding *this general rule, we can well see how the party in this case might be injured, in the consideration of the jury, by the rejection of the evidence offered, and are not satisfied that the whole merits of this case have been passed upon. The evidence rejected was material evidence. The party was entitled to its admission under the rules of law in this case, and we reverse the decision of the Court below, that the matters in controversy may be more fully inquired into and the legal rights of the parties upon the consideration of the whole evidence in this case be adjudicated.

Judgment reversed.